CONCORDIA COMPANY, INC., Plaintiff–Appellee,

v.

Anthony PANEK, Defendant–Appellant.

No. 96–1798.

United States Court of Appeals, First Circuit.

Heard April 10, 1997.

Decided June 4, 1997.

Richard H. Gens, Centerville, MA, with whom Lawrence M. Perlmutter, Boston, MA, was on brief, for appellant.

Stephen C. Fulton, Natick, MA, with whom Law Office of Bruce R. Fox, Boston, MA, was on brief, for appellee.

Before TORRUELLA, Chief Judge, SELYA, Circuit Judge, and SARIS,* District Judge.

* Of the District of Massachusetts, sitting by desig-

SARIS, District Judge.

This case began with a bang. In the early morning hours of March 29, 1993, Gerald Chapman, the night watchman at Concordia Company's boat yard in South Dartmouth, Massachusetts, awoke to the sound of an explosion. The PROWLER, a pleasure boat owned by Anthony Panek and moored at the boat yard, burst into flames. Although fire fighters arrived in only a few minutes, by the time they extinguished the blaze the PROWLER was still afloat but burned almost to its gunnels. However, by morning the PROWLER had sunk beneath the briny waters of Apponagansett Bay, leaving an oil slick in its wake.

A lawsuit ensued. Concordia filed a complaint alleging a single count in admiralty for its costs of cleaning up the oil and hauling the remains of the PROWLER out of the Bay. Panek counterclaimed for the damage done to his boat, alleging causes of action for breach of contract, negligence, misrepresentation, and a violation of Chapter 93A of the Massachusetts General Laws. Panek alleged generally that Concordia did not fulfill its promise to provide adequate security at the boat yard and that the lack of security caused the fire. Panek also alleged that Concordia should have prevented the PROWLER from sinking by adequately securing it to the dock while it was still afloat.

The case was tried to the district court with an advisory jury. The district court found for Concordia on its admiralty claim for all of its clean up and hauling costs. However, it also found for Panek on his claims that Concordia was negligent and breached its contractual duty to secure the boat by failing to remove the hull of the boat from the water when it was still floating. The Court awarded damages to Panek for all of the clean up and half the hauling costs, which resulted in an offset judgment for Concordia for half of its hauling costs. On appeal, Panek argues that the district court erred by denying his request for a jury trial on his common law counterclaims. We affirm.

nation.

## I.  PROCEDURAL BACKGROUND

Concordia's complaint included a single admiralty count, was captioned "In Admiralty", and stated it was within the court's admiralty and maritime jurisdiction as set forth in Fed. R.Civ.P. 9(h).  Plaintiff made no demand for a jury trial.  Panek's pleading containing the Answer and Counterclaims was similarly captioned "In Admiralty" with no other basis of jurisdiction stated and no jury demand made.  This pleading contained no mention of Fed. R.Civ.P. 9(h).  However, in its answer to the counterclaims, Concordia made a jury demand, which it later withdrew.  Before trial, Panek moved to bifurcate his common law counterclaims from the complaint to allow the former to be tried by jury.  He mistakenly based his motion on a previous request for a jury trial, which was never made, at least in writing.  The district court denied this motion.

After the close of evidence at trial, the district court judge ruled that there was insufficient evidence to warrant a finding on the negligence count and submitted the breach of contract and misrepresentation counts to the advisory jury.  The jury returned a verdict finding that Concordia was not liable for misrepresentation but that it was liable to Panek for the breach of contract count in the amount of $16,000—the total amount of damage done to the PROWLER.  The district court declined to adopt the advisory jury's verdict on the breach of contract counterclaim, entering its own bench judgment on all the claims as follows: Concordia was not liable for misrepresentation or violating Chapter 93A; Panek was liable for the admiralty claim for $4,560.35; and Concordia was liable for negligence and breach of contract for $3,938.50—the cost of the clean up and half the hauling.  The Court acknowledged it was "reversing" its earlier determination that there was insufficient evidence on the negligence claim with respect to Concordia's failure to prevent the PROWLER from sinking.  After offsetting the two judgments, Panek was held liable for $621.85 plus statutory interest.

## II.  STANDARDS OF REVIEW

The primary dispute on appeal is whether the district court erred by failing to submit Panek's common law claims to a non-advisory jury.  Panek argues that he retained his right to a jury on his common law claims under the "saving to suitors" clause of 28 U.S.C. § 1333(1).[1]  We review claimed errors of law *de novo*.  *Windsor Mount Joy Mut. Ins. Co. v. Giragosian*, 57 F.3d 50, 53 (1st Cir.1995) (citing *Williams v. Poulos*, 11 F.3d 271, 278 (1st Cir.1993); *Blanchard v. Peerless Ins. Co.*, 958 F.2d 483, 487 (1st Cir. 1992)).  Panek also challenges the district court's calculation of damages.  "The district court's findings of fact, however, will not be set aside unless they are demonstrated to be clearly erroneous."  *Id.* at 53 (citing *Williams*, 11 F.3d at 278; Fed.R.Civ.P. 52(a)).

## III.  DISCUSSION

### A.  The Claimed Right to a Jury

The first issue the Court considers is whether the counterclaimant waived any right to a jury he may have retained by designating his counterclaim as "In Admiralty" with no jury demand.

■ If this suit had involved only non-admiralty claims, Panek would have had a right to a jury trial on his common law claims.  Fed.R.Civ.P. 38(a) provides that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."  *Any* party can preserve its right to a jury by making a timely demand for a jury trial, Fed.R.Civ.P. 38(b), and once the demand is made, *both* parties must consent before it can be withdrawn, Fed.R.Civ.P. 38(d), 39(a).  *See Dell'Orfano v. Romano*, 962 F.2d 199, 202 (2d Cir.1992) ("A plaintiff is entitled to rely on a

---

1.  The saving to suitors clause provides:
    The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
    (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
    28  U.S.C. § 1333(1).

defendant's jury demand to preserve his own right to a jury trial. . . .").

■ When claims which could be characterized as either admiralty or common law claims are raised in a case, a party's right to a jury trial becomes more complex. *Cf.* Fed. R.Civ.P. 38(e) (providing that "[t]hese rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h)"). Generally, there is no constitutional right to jury trial for admiralty claims. *See Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 19, 83 S.Ct. 1646, 1649, 10 L.Ed.2d 720 (1963). Congress has, however, created a statutory right to a jury trial for certain admiralty claims. *See, e.g.,* 28 U.S.C. § 1873 (1994) (Great Lakes Act); 46 U.S.C.App. § 688 (1988) (Jones Act). In addition, the Supreme Court has held that plaintiffs who assert both a Jones Act claim, which creates a statutory right to a jury trial on the law side of the court, and closely related admiralty claims for unseaworthiness and maintenance and cure are entitled to a jury trial on *both* kinds of claims. *Fitzgerald,* 374 U.S. at 21, 83 S.Ct. at 1650 (holding that "only one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments"); *see also* Charles Alan Wright & Arthur R. Miller, 9 *Federal Practice and Procedure* § 2315 (1995).

■ When a claim sounds both in admiralty and in common law, a plaintiff can preserve his right to a jury by following certain procedures. Pursuant to the so-called "saving to suitors" clause, 28 U.S.C. § 1333(1), the federal district courts have "original jurisdiction, exclusive of the courts of the states," over admiralty and maritime cases, saving to suitors in all cases all other remedies to which they are otherwise entitled. *Lewis v. United States,* 812 F.Supp. 620, 626 (E.D.Va.1993). Interpreting the "saving to suitors" clause to reserve to plaintiffs the right to a common law remedy "in all cases where the common law is competent to give

it," the Supreme Court held that "the common law is as competent as the admiralty to give a remedy in all cases where the suit is in personam against the owner of the property." *Leon v. Galceran,* 78 U.S. (11 Wall.) 185, 191, 20 L.Ed. 74 (1870). This statute permits plaintiffs to retain a right to a jury for "saving-clause claims" [2]—those admiralty claims that could have also been tried to a jury at common law—by either bringing suit in state court or in the general jurisdiction of federal court. *See generally Odeco Oil & Gas Co., Drilling Division v. Bonnette,* 74 F.3d 671, 674 (5th Cir.1996) ("The saving to suitors clause evinces a preference for jury trials and common law remedies in the forum of the claimant's choice."). Consequently, a plaintiff's saving-clause decision determines whether the judge or a jury will act as factfinder for saving-clause claims.

Where claims are cognizable either in admiralty or in a nonmaritime ground of federal jurisdiction, Rule 9(h) sets forth the procedure by which a plaintiff indicates his choice to proceed in admiralty for a saving-clause claim in federal court. Fed.R.Civ.P. 9 advisory committee note; *see generally* Woodhouse, *supra,* at 79 (noting that after the unification of admiralty and civil procedure rules in 1966, the "saving clause option to choose whether to proceed in admiralty or diversity has been retained in Rule 9(h), which permits the suitor to identify his claim as an admiralty claim in order to have admiralty procedures applied"). Rule 9(h) provides in pertinent part:

> A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), and the Supplemental Rules for Certain Admiralty and Maritime Claims.

Fed.R.Civ.P. 9(h).

"The impact of the 9(h) election is that all claims are tried by the court, rather than the

---

2. *See* Barbara Bennett Woodhouse, Comment, Powell v. Offshore Navigation, Inc.: *Jurisdiction Over Admiralty Claims and the Right to Trial by Jury,* 82 Colum. L.Rev. 784, 787 (1982) (describing common law claims also sounding in admiralty as "saving-clause claims").

jury." *Insurance Co. of N. Am. v. Virgilio*, 574 F.Supp. 48, 50 (S.D.Cal.1983) (citing Charles Alan Wright & Arthur R. Miller, 9 *Federal Practice and Procedure* § 2315 at 76 (1971); *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Bauer Dredging*, 74 F.R.D. 461, 461 (S.D.Tex.1977)). A waiver of the right to a jury is implicit in this election. *See Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038, 1041 (8th Cir.1983) ("Generally, such an election precludes a jury trial."); *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252–53 (5th Cir.1975) (denying plaintiff's request for a jury trial because complaint alleged that the "basis for jurisdiction is the admiralty and maritime jurisdiction"); *McCann v. Falgout Boat Co.*, 44 F.R.D. 34, 42 (S.D.Tex.1968) ("Rule 38(e) ... preserves for admiralty and maritime cases the plaintiff's right to foreclose a demand by defendant for jury trial....").

■ When the case itself is hybrid—that is, the complaint is designated as in admiralty and a compulsory counterclaim contains saving-clause claims—as the case is here, matters become even more complicated. *See generally* Billy Coe Dyer, Note, *The Jury on the Quarterdeck: The Effect of Pleading Admiralty Jurisdiction When a Proceeding Turns Hybrid*, 63 Tex. L.Rev. 533, 537 (1984) (analyzing the problem of hybrid actions). In hybrid cases, the question arises whether the plaintiff's 9(h) designation should control the procedures for the entire case or whether the court should attempt to accommodate the counterclaimant's Seventh Amendment right.

There is a split of authority on this issue. Some courts have concluded that a plaintiff's Rule 9(h) election characterizes the whole action regardless of any Seventh Amendment right the counterclaimant may have had to a jury trial. *See, e.g., Virgilio*, 574 F.Supp. at 51 (denying jury trial on a compulsory counterclaim filed by an insured in response to a declaratory judgment action by an insurance company); *Arkwright–Boston Mfrs. Mut. Ins. Co.*, 74 F.R.D. at 461 (same); *Camrex Ltd. v. Camrex Reliance Paint Co., Inc.*, 90 F.R.D. 313, 317 (E.D.N.Y.1981) ("The right to a jury trial in actions at common law ... provides no basis for claiming a jury trial with respect to the issues in an admiralty or maritime claim so designated (as plaintiff has done) under Rule 9(h)....").

Other courts have allowed a separate jury trial on the common law claims where "both parties using different triers of fact, could prevail on their respective claims without prejudicing the other party or arriving at inconsistent results." *Koch Fuels, Inc.*, 704 F.2d at 1042 (citing Fed.R.Civ.P. 42(b)); *accord Alaska Barite Co. v. Freighters Inc.*, 54 F.R.D. 192, 194 (N.D.Cal.1972) (admiralty claim tried to bench with separate trial for permissive counterclaim). *But see Royal Ins. Co. of Am. v. Hansen*, 125 F.R.D. 5, 9 (D.Mass.1988) (denying counterclaimant's request for a jury trial because of relation between counterclaims and admiralty claim and possibility of inconsistent results). For example, in *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*, the Eighth Circuit affirmed the district court's grant of a separate jury trial for the common law counterclaim and a bench trial for the plaintiff's admiralty claim. 704 F.2d at 1041–42. The court noted that "[a]lthough there is no constitutional right to a jury trial in admiralty cases," the "trial court must, whenever possible, strive to preserve the right to a trial by jury." *Id.* (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959)). The Eighth Circuit affirmed the district court's grant of two fact-finders because the parties' claims were easily separated, one involving wrongful conversion and the other breach of contract. *Id.* at 1042.

The Court declines to resolve the difficult issue raised by the hybrid nature of the suit because this case can be resolved on a narrower ground. Assuming without deciding under the *Koch Fuels* rationale that Concordia's designation of the action as arising in admiralty did not necessarily control the entire action, we nonetheless conclude that Panek waived his right to a jury by making a 9(h) election to proceed "In Admiralty" without making a demand for a jury in the counterclaim.

To begin, Rule 9(h) applied to Panek's counterclaim because his claims for breach of contract and negligence were saving-clause claims that could have been brought either in

the district court's supplemental jurisdiction or in admiralty. Panek's contract with Concordia was sufficiently maritime in nature to fall within the district court's admiralty jurisdiction. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 889, 6 L.Ed.2d 56 (1961) (marine insurance contracts); *Carroll v. Protection Maritime Ins. Co., Ltd.*, 512 F.2d 4, 6 (1st Cir.1975) (contract between seamen and vessel owner); *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 587–88 (5th Cir.) (contract for repairs at shipyard), *cert. denied*, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983). Panek's negligence claim that Concordia's lax security caused the fire or that its failure to prevent the PROWLER from sinking is also maritime in nature. *See Butler v. American Trawler Co., Inc.*, 887 F.2d 20, 21 (1st Cir.1989) ("[T]here is admiralty jurisdiction if the tort at issue 1) occurred on navigable waters and 2) bore a significant relation to traditional maritime activities."); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972) (holding that for the purposes of admiralty jurisdiction, a tort occurs where the negligence "takes effect," not where the negligent act occurred). Consequently, the district court could have exercised jurisdiction over the counterclaims either under its "supplemental jurisdiction" pursuant to 28 U.S.C. § 1367, or admiralty, 28 U.S.C. § 1333, at least with respect to the breach of contract and negligence claims.

Having concluded that Rule 9(h) could be invoked, we next consider whether Panek in fact made the requisite 9(h) "identifying statement" in his counterclaim, thereby waiving his right to a jury trial. *Insurance Co. of N. Am. v. Virgilio*, 574 F.Supp. 48, 51 (S.D.Cal.1983) ("By invoking 9(h) the plaintiff may preclude a right to a jury trial which might otherwise exist."). We conclude that he did, although the election could have been more artfully made.[3] While the preferred technique is to invoke expressly Rule 9(h), Charles Alan Wright & Arthur R. Miller, 5 *Federal Practice and Procedure* § 1313 at 719 (1990), the words "In Admiralty" in the caption with no accompanying demand for a jury trial, were sufficient to constitute a 9(h) election for admiralty procedures. *See, e.g., Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 345 (5th Cir.1991) (holding that a party need not make a specific reference to Rule 9(h) to fall under admiralty jurisdiction).

One important factor in determining whether a claimant has elected to proceed in admiralty is whether he demanded a jury trial. *Lewis v. United States*, 812 F.Supp. 620, 627 (E.D.Va.1993) (holding that a demand for a trial by jury "is inconsistent with an intent to proceed in admiralty"); *cf. Royal Ins. Co. of Am. v. Hansen*, 125 F.R.D. 5, 8 (D.Mass.1988) ("Where a claim is made in accordance with Rule 9(h), the existence of diversity as an alternative basis of jurisdiction will not entitle plaintiff to a jury trial."); *Banks v. Hanover Steamship Corp.*, 43 F.R.D. 374, 376–77 (D.Md.1967) (holding that a complaint that asserts both admiralty jurisdiction and diversity jurisdiction is not an adequate 9(h) designation to trigger admiralty procedures).

Panek argues that the words "In Admiralty" in the caption of the counterclaim were merely a label and not an "identifying statement." However, courts have held that similar titles in the captions of complaints were sufficient to trigger the identification mechanism in Fed.R.Civ.P. 9(h). *See, e.g., Teal*, 933 F.2d at 345. Moreover, Panek's argument that his jury trial right was preserved by Concordia's subsequent jury trial demand in its answer to the counterclaim is unavailing here. While in a nonadmiralty case *any* party may assert a demand for a jury trial and *both* parties must consent to the withdrawal of the demand, in an admiralty case, a 9(h) election for admiralty cannot be undone by the opposing party's jury demand. *See* Fed.R.Civ.P. 9(h); *Craig v. Atlantic Richfield Co.*, 19 F.3d 472, 476–77 (9th Cir.), *cert. denied*, 513 U.S. 875, 115 S.Ct. 203, 130 L.Ed.2d 133 (1994) (holding that plaintiff was not entitled to rely on a defendant's jury demand where the defendant had neither a constitutional nor a statutory right to make

---

3. *Cf.* Fed.R.Civ.P. Form 2(d) ("If the pleader wishes to invoke the distinctively maritime procedures referred to in Rule 9(h), add the following or its substantial equivalent: This is an admiralty or maritime claim within the meaning of Rule 9(h).").

such a demand); *Cateora v. British Atl. Assurance, Ltd.,* 282 F.Supp. 167, 169 (S.D.Tex. 1968) (striking defendant's jury demand because plaintiff had made 9(h) election in favor of admiralty). In short, Concordia's jury demand was a nullity and Panek could not rely on it.

We hold that Panek made a 9(h) election by designating his claim as "in admiralty" with no jury demand, assuming without deciding that he retained his right to a jury even after the plaintiff had made its Rule 9(h) designation.[4]

### B. Damages

Panek claims that the trial judge erred in not using the advisory jury's determination of damages on the contract count of the counterclaims. Specifically, Panek seeks to reinstate the jury award of $16,000 to reflect the evidence in the record that the tuna tower (worth $10,000) and the navigation and fishing equipment (worth $6,000) were destroyed in the explosion. However, the district court found that Concordia breached its duty to Panek only after the fire was extinguished and after this property was burned. The district court carefully assessed the damages proximately caused by Concordia's breach of duty by failing to take reasonable care of the hull while it was still afloat and by permitting the PROWLER to sink. The district court's factual determinations of damage are reviewed only for clear error, *see Windsor Mount Joy Mut. Ins. Co. v. Giragosian,* 57 F.3d 50, 53 (1st Cir.1995), and Panek does not come close to meeting this standard. We hold that the district court did not clearly err in its damages findings.

*AFFIRMED.*

---

**4.** Because we decide the case on this ground we need not address Concordia's further argument that the district court's judgment should be affirmed because there was insufficient evidence under either a breach of contract or negligence theory to find that Concordia's breach of duty caused the fire.